UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED
JUN 1 9 2003
Michael N. Milby
Clerk of Court

| | |
|---|---|
| E. HERNANDEZ DE ANGUIANO ) | |
| ) | |
| v. ) | C.A. No. B-03-116 |
| ) | |
| PHILIP D. TUTAK, DHS INTERIM DISTRICT ) | INS A No. 42 913 514 |
| DIRECTOR FOR INTERIOR ENFORCEMENT, ) | |
| and ) | |
| JOHN ASHCROFT, ATTORNEY ) | |
| GENERAL OF THE UNITED STATES. ) | |

## PETITION FOR WRIT OF HABEAS CORPUS

Elizabeth Hernandez de Anguiano, Petitioner, files the instant Petition for Writ of Habeas Corpus, and shows as follows:

### I. JURISDICTION AND VENUE

1. Jurisdiction herein arises under 28 U.S.C. §§2241 (habeas corpus) and 1331 (federal question).

2. The Petitioner Ms. Hernandez de Anguiano is under an administratively final order of removal (See Exhibit A) which order places significant restrictions on her liberty not shared by the populace at large, including the fact that she cannot travel outside of the United States. *Jones v. Cunningham* 371 U.S. 236, 240(1963). Her immigration proceedings were held at the Harlingen, Cameron County, Texas, Immigration Court.

3. The Respondent Philip Tutak maintains his offices in Cameron County, Texas, within the jurisdiction of this court.

### II. THE PARTIES

4. Petitioner Ms. Hernandez de Anguiano has been a legal permanent resident for eleven (11) years. She is a thirty-three (33) year old native and citizen of Mexico who became a legal permanent resident at the age of twenty-one (21) but she originally entered the U.S. with her first husband when she was fifteen. She has a single state court judgment of deferred adjudication on February 4, 1998 for possession of marijuana occurring in Kleberg County, Texas, the criminal act having occurred on

February 8, 1997. Besides this single possession offense, the Petitioner Ms. Hernandez de Anguiano has been a productive member of American society.

5. Respondent Philip Tutak is the Interim District Director for Interior Enforcement, Department of Homeland Security, Cameron County, Texas (herein "DHS"). He is sued in his official capacity only.

6. Respondent John Ashcroft is the Attorney General of the United States. He is also sued in his official capacity only.

### III. THE FACTS

7. Petitioner Ms. Hernandez de Anguiano was admitted to the United States as a lawful permanent resident (herein "LPR") when she was twenty-one (21) years old, on or about August 9, 1991.

8. On or about February 4, 1998, she was given community supervision for first time possession of marijuana for seven (7) years.

9. Immigration proceedings against Petitioner began in February 6, 1998 charging removability based on a violation of law involving controlled substances. She was not charged with having committed an aggravated felony. A copy of the Notice to Appear ("NTA" herein) is attached as Exhibit B. On October 2, 1998, the Immigration Judge terminated immigration proceedings against Ms. Hernandez de Anguiano based on *Matter of Manrique*, 21 I & N 58 (BIA 1995), and the Respondents appealed.

10. After a delay of over four (4) years, the Board of Immigration Appeals (BIA) issued its opinion on May 27, 2003, sustaining the appeal and ordering the removal of Ms. Hernandez de Anguiano within thirty (30) days. A copy of the BIA decision is attached as Exhibit A hereto. Petitioner alleges that except for the administrative proceedings detailed herein, she has sought no other court review of the validity of any immigration court order or BIA decision prior to the filing of this instant suit. She has not been deported from the United States.

11. The Petitioner has exhausted her administrative remedies. She urges that because she has lived in the United States for many years, because she has six (6) United States citizen children, and because of her single offense for which she received deferred adjudication, she should be entitled to consideration of her equities. Specifically, she believes that the deferred adjudication judgment should not be considered a "conviction" based upon the representations made to her at the time of the conviction. In support of her request to the Court, attached hereto is her Affidavit as Exhibit C.

12. From the time of Petitioner's criminal conduct and subsequent involvement in immigration court, from February 8, 1997 to the present, several significant legal

developments in immigration law impacted this case as follows:

√On March 3, 1999, the BIA decided that *Manrique,* op.cit. had been superseded by 8 USC Sec. 1101(a)(48)(A). *Matter of Roldan*Int. Dec. 3377 (BIA 1999).

√Then on May 11, 2001, in *U.S. vs. Hernandez-Avalos,* 251 F. 3rd 505 (5th Cir. 2001), the Fifth Circuit held that felony possession of a controlled substance constituted an aggravated felony and suggested that uniformity would be promoted if the interpretation of the sentencing guidelines were applied to immigration cases.

√Finally, in 2002, the BIA ruled in *Matter of Yañez,* 23 I&N Dec. 390(BIA 2002) that it will defer to the law of the federal circuit court to determine whether or not a drug trafficking offense is an aggravated felony.

13. Because Ms. Hernandez de Anguiano has such substantial roots in the United States, has so many U.S. citizen children here and demonstrates such a good immigration record, she believes that proceedings against her should be terminated.

14. Upon information and belief, Petitioner alleges that a significant number of legal permanent residents (herein LPRs) who were otherwise similarly situated, in that they plead guilty to a criminal offense involving simple first time possession of marijuana have either: 1) Received *Manrique* treatment and their proceedings were terminated without further appeal; or 2) they filed for and received cancellation of removal.

## IV. THE CAUSE OF ACTION

### HABEAS CORPUS

Petitioner reasserts and incorporates by reference paragraphs 1- 14 herein.

Petitioner Ms. Hernandez de Anguiano asserts that the removal order violates the laws and Constitution of the United States, which claims are cognizable in habeas corpus under 28 U.S.C. §2241.

*1. Impermissible Retroactive Application of Law*

Petitioner alleges that the 2003 Board decision impermissibly violated her due process rights and federal law as enunciated in *INS v. St. Cyr,* 533 U.S. 289, 121 S. Ct. 2271, 150L. Ed 2d 347 (2001). Ms. Hernandez de Anguiano urges that the interpretation of the law, as reflected in the BIA decision, constitutes retroactive application of the law to her. At the time of the entry of the judgment of deferred

adjudication, at the time the Notice to Appear issued (which does not even allege the commission of an aggravated felony), and at the time of termination of proceedings, under the law of the circuit, the Petitioner had no conviction which this Circuit had determined was an aggravated felony. Not until 2001, approximately four (4) years after her crime, was it determined that her act constituted an aggravated felony. This position is illustrated by a review of the BIA decision itself, Exhibit A. The cases cited there were decided after Petitioner's criminal act, and almost all were decided after the judgment of deferred adjudication.

### 2. *Statutory Construction*

#### a. Aggravated Felony

Ms. Hernandez de Anguiano urges that the BIA erred as a matter of law in determining that her conviction for simple first-time possession constitutes an aggravated felony. The NTA does not even allege an aggravated felony. There is no allegation of or evidence of drug trafficking. The charge, guilty plea and judgment all relate to simple possession of marijuana. Until the decision of May 27, 2003, approximately six (6) years after the criminal act, no prior immigration court had determined that her first time simple possession conviction constituted an aggravated felony. The record is also devoid of evidence of any charge or element of drug trafficking.

#### b. Definition of Conviction

Petitioner further contends that the BIA, as a matter of law, incorrectly interpreted the meaning of as well as the the Congressional intent of 8 U.S.C 1101(a)(48)(A), as amended in 1996. Specifically, Ms. Hernandez de Anguiano urges that Congress did not intend to repeal the Federal First Offenders Act as applied to immigrants and/or Congress did not intend by its re-definition of "conviction" to include cases, such as Petitioner's, who have received community supervision from a state criminal court for a first time, simple possession of a controlled substance. In

Petitioner's case, the situation is exacerbated because Ms. Hernandez de Anguiano states that she thought by pleading guilty her state court sentence would be affected; that is, that as an alien she would stand to serve more time if she went to trial than if she had been a United States citizen. See Exhibit C hereto. She did not realize that the plea would effect her immigration status. Clearly, there was and is nothing in state law to give Ms. Hernandez de Anguiano any notice that her plea of deferred adjudication would be treated differently under state law, about which her criminal defense attorney may have advised her, than under federal immigration law.

### 3. Equal Protection

#### i. Differing Results Depending of Federal or State Criminal Prosecution

Petitioner also claims that the BIA's interpretation of the law as applied to this case violates equal protection because the Board interpretation turns on whether the immigrant was brought into state or federal court on criminal charges as to whether the Federal First Offender Act applies.

#### ii Differing Results in Different Circuit Jurisdictions

Given the national scope of U. S. immigration law, Ms. Hernandez de Anguiano also asserts that it violates equal protection for the result of her case to hinge solely on the particular federal circuit in which removal proceedings are held. Had she been in immigration proceedings in the Ninth Circuit, for example, she would not have been subject to removal at all. Petitioner would further show that other immigrants whose immigration proceedings arose within the Fifth Circuit, and who successfully transferred venue to other immigration courts located in certain other circuit courts obtained relief.

#### iii Different Results Due to Timing of Proceedings

Ms. Hernandez de Anguiano would show that the treatment of her case has depended on the timing of law changes and court rulings. This is best exemplified in the instant proceeding itself, in which the 2002 BIA decision, *Matter of Yañez,* op. cit. ,

serves as the basis for the BIA Decision. The BIA has completely ignored the *St. Cyr*, op.cit. decision of the U.S. Supreme Court of 2001, in its decision. Other varying results were also possible, based on court rulings in other cases, depending upon the date of hearing, date of law changes and date of court rulings. Petitioner acknowledges that she sought termination under the prevailing law at the time, which was granted to her, but Respondents appealed  It violates equal protection for the result of whether Ms. Hernandez de Anguiano is allowed the possibility of remaining in the United States, or instead is barred from continued lawful permanent resident status, separated from her family and permanently barred from returning to the United States, based solely on the timing of immigration proceedings.

### 4. Substantive Due Process

Petitioner Ms. Hernandez de Anguiano further and/or in the alternative asserts that a deportation of her from the United States would violate a fundamental liberty interest which she has to live and work in the United States and a right to unite with her U.S. citizen children and other legal family within the United States. *Landon vs. Plasencia*, 459 U.S. 21, 34 (1982); *Bridges vs. Wixp*826, U.S. 326 U.S. 135, 154(1945). In *Plasencia*, the Court wrote:

> Plasencia's interest here is, without question, a weighty one. She stands to lose the right "to stay and live and work in this land of freedom...Further she may lose the right to rejoin her immediate family, a right that ranks high among the interests of the individual. *Op. cit*. P.34.

As a lawful permanent resident, Ms. Hernandez de Anguiano enjoys the same Due Process rights, including substantive Due Process rights.

A violation of the constitutional protection to substantive due process exists when a provision, or a combination of provisions, such as exists in this case operate together to create an unjustifiable conclusive presumption which is so broad that it does not meet a compelling state interest. *United States v. Salerno*, 481 U.S. 739, 747 (1987).  In the instant case, the 1996 law changes brought by the Antiterrorism and Effective Death Penalty Act of 1996 , the Illegal Immigration Reform and Immigrant

Responsibility Act, which re-defined 8 U.S.C. Sec. 1101(a)(48)(A) regarding "conviction", combined with the statutory and court established overly broad and variable definitions of the term, all create an unconstitutional presumption that all lawful permanent residents who have such a court adjudication should be barred from the United States, even when the state criminal system has determined that it is appropriate as a first time offender with a simple, non-assaultive situation to forego an adjudication of guilt and to grant community supervision.

### 5. Procedural Due Process

Petitioner Ms. Hernandez de Anguiano, additionally and/or in the alternative, urges that the BIA's decision deprives her of procedural due process as required by the U.S. Constitution. *Reno v. Flores* 507 U.S. 292, 306 (1993). The Petitioner asserts an entitlement to "fair notice" of a law change. In Ms. Hernandez de Anguiano' case, at the time of her criminal conduct, at the time of the judgment of deferred adjudication, and when immigration proceedings began and were concluded by termination of proceedings, relief was available. But by the BIA delay in rendering a decision, and by applying the interpretation of law retroactively and selectively, the BIA is now able to hold that only removal remained an option. This result could not have been contemplated at the time of Ms. Hernandez de Anguiano's guilty plea or at the time the immigration proceedings were initiated, as shown by the NTA which itself does not charge removability based upon an aggravated felony. The concept of fair notice applies not just to criminal cases but also to civil penalties, such as removal. The U.S. Supreme Court has addressed the impermissible retroactive change in a civil penalty in *BMW vs. Gore*, 517 U.S. 559, 574, (1996). It stated:

> Elementary notice of fairness enshrined in this Court's constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that a State may impose.

Because Ms. Hernandez de Anguiano had no notice of the civil penalty--deportation--

facing her at the time she plead guilty and because the penalty is much harsher than it was at the time of either her criminal conduct and/or the date of the judgment of deferred adjudication, the law is imposed in a retroactively impermissible fashion. This legal permanent resident in the U.S. from a relatively young age of fifteen (15) years was without notice of the penalties facing her at the time of her guilty plea.

### 6. International Law and Treaty Obligations

As an additional or alternative basis for the granting of the Writ of Habeas Corpus, Petitioner Ms. Hernandez de Anguiano would show that the BIA decision violates international law and treaty obligations between the United States and Mexico, Ms. Hernandez de Anguiano's birth place. *Universal Declaration of Human Rights*. Doc.A/811, Part III Articles 13, 15 and 26 (1948).

### V. PRAYER

Wherefore, the Petitioner pays that this Court grant the following:

1) Assume jurisdiction over this matter;

2) Stay any removal of Petitioner;

3) Declare the BIA Decision of May 2003 void and unlawful and set it aside;

4) Order that Petitioner's immigration case be reopened to terminate proceedings;

5) Order that Petitioner's legal permanent residency card be returned to her; and

6) Grant any other relief which this Court deems just and proper.


Respectfully Submitted,

*[signature]*

Paula S. Waddle, Attorney in Charge
South Texas Immigration Council
107 N. 3rd
Harlingen, TX 78550
(956) 425-6987
(956) 425-7434(fax)
State Bar No 26030400
Fed. I.D. No. 5674

## VERIFICATION

I, Paula S. Waddle, hereby certify that I am familiar with the removal case of the named Petitioner, and that the facts as stated with respect thereto are true and correct to the best of my knowledge and belief.

*[signature]*
Paula S. Waddle
June 18, 2003

## CERTIFICATE OF SERVICE

I, Paula S. Waddle, hereby certify that a copy of the foregoing was mailed FIRST CLASS MAIL to Ms. Lisa Putnam, SAUSA, DHS District Office, at 1701 Zoy, Harlingen, Texas 78550, on the 18th day of June, 2003.

*[signature]*
Paula S. Waddle

U.S. Department of Justice

Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

---

File: A42 913 514 - Harlingen                    Date:

In re: ELIZABETH HERNANDEZ DE ANGUIANO

IN REMOVAL PROCEEDINGS                          MAY 27 2003

APPEAL

ON BEHALF OF RESPONDENT:   Margarita Moreno, Accredited Representative

ON BEHALF OF SERVICE:   Lisa M. Putnam
                        Assistant District Counsel

CHARGE:

    Notice: Sec.   237(a)(2)(B)(i), I&N Act [8 U.S.C. § 1227(a)(2)(B)(i)] -
                       Convicted of controlled substance violation

    Lodged: Sec.   237(a)(2)(A)(iii), I&N Act [8 U.S.C. § 1227(a)(2)(A)(iii)] -
                       Convicted of aggravated felony

APPLICATION: Termination

ORDER:

    PER CURIAM. The Immigration and Naturalization Service ("Service," now part of the Department of Homeland Security, DHS) appeals from an October 2, 1998, Immigration Judge's decision which terminated proceedings against the respondent. The respondent was convicted on February 4, 1998, in a Texas state court for illegal possession of more than 5 pounds of marijuana, a third-degree felony in that state. *See* Exhs. 3 and 4. The Service's appeal is sustained.

    The Immigration Judge found that the respondent was not guilty of a drug trafficking crime, and thus not guilty of an aggravated felony–distinguishing case law from the United States Court of Appeals for the Fifth Circuit, under whose jurisdiction this case falls. Thus, he held that the respondent was not removable as an aggravated felon. Although the Immigration Judge found that the separate removability charge of a controlled substance violation had been "substantiated" (I.J. at 2), he apparently concluded, pursuant to *Matter of Manrique*, 21 I&N Dec. 58 (BIA 1995), that the respondent would have qualified for "first offender" status and was thus not ultimately removable under that charge either.



A42 913 514

Under section 101(a)(43)(B) of the Immigration and Nationality Act ("Act"), 8 U.S.C. § 1101(a)(43)(B), an aggravated felony includes illicit trafficking in a controlled substance as defined in section 102 of the Controlled Substances Act ("CSA"), including a drug trafficking crime as defined in 18 U.S.C. § 924(c). The United States Court of Appeals for the Fifth Circuit, under whose jurisdiction this case falls, has held that a Texas conviction for possession of marijuana, being a state felony that was punishable under the CSA was considered an aggravated felony, even if only punishable under the CSA itself as a misdemeanor. *United States v. Hinojosa-Lopez*, 130 F.3d 691 (5th Cir. 1997); *see also United States v. Hernandez-Avalos*, 251 F.3d 505 (5th Cir. 2001) (possession of heroin, a "class three" felony in Colorado, being punishable under the CSA was a drug trafficking crime, and thus and aggravated felony); *United States v. Caicedo-Cuero*, 312 F.3d 697 (5th Cir. 2002) (Texas jail felony of simple possession of marijuana was considered an aggravated felony). In the present case, therefore, the respondent's third-degree felony conviction in Texas for more than 5 pounds of marijuana is a drug trafficking crime and thus an aggravated felony. Accordingly, we conclude, the respondent is removable under the aggravated felony charge.

We now turn to whether the respondent is removable for a controlled substance violation. In *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999), *rev'd in part, Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), decided after the Immigration Judge issued his decision in this case, we held that the policy exception in *Matter of Manrique, supra*, that accorded federal first offender status to certain drug offenders who had received state rehabilitative treatment was superseded by the enactment of section 101(a)(48)(A) of the Act. That section, which defines "conviction," gives no effect to state rehabilitative actions in immigration proceedings. This statutory construction applies in the Fifth Circuit. *See United States v. Hernandez-Avalos, supra; Matter of Salazar*, 23 I&N Dec. 223 (BIA 2002) (an alien whose adjudication of guilt was deferred under article 42.12, section 5(a) of the Texas Code of Criminal Procedure for controlled substance violation stood "convicted" of that offense for immigration purposes; rule applied in Fifth Circuit but not in Ninth Circuit); *see also Matter of Yanez*, 23 I&N Dec. 390 (BIA 2002) (determination of whether a state drug offense constitutes a drug trafficking crime and is thus an aggravated felony shall be made by reference to decisional authority from the federal circuit courts of appeals). Here, the respondent pled guilty, and the trial court entered punishment in the form of 7 years of community supervision. *See* Exh. 4. Thus, applying Fifth Circuit precedents, the record establishes that the applicant remains "convicted" within the meaning of the Act. Accordingly, we find that the respondent is removable for a controlled substance violation in addition to being removable for having been convicted of an aggravated felony.[1] *See generally, Moosa v. INS*, 171 F.3d 994 (5th Cir. 1999).

---

[1] Because the respondent's guilty plea came after passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214. and after the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, she is not eligible for relief under former section 212(c) of the Act. *See generally, INS v. St. Cyr*, 533 U.S. 289 (2001).

2

A42 913 514

FURTHER ORDER: The Immigration Judge's October 2, 1998, decision is vacated and the respondent is ordered removed to Mexico.

_____
FOR THE BOARD

3

```
                    IMMIGRATION COURT
                   201 E. JACKSON STREET
                    HARLINGEN, TX 78550
```

In the Matter of

Case No.: A42-913-514

HERNANDEZ-DE ANGUIANO, ELIZABETH
    Respondent

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE

This is a summary of the oral decision entered on Oct 2, 1998.
This memorandum is solely for the convenience of the parties. If the
proceedings should be appealed or reopened, the oral decision will become
the official opinion in the case.

[ ] The respondent was ordered removed from the United States to
    _____ or in the alternative to _____

[ ] Respondent's application for voluntary departure was denied and
    respondent was ordered removed to _____
    alternative to _____

[ ] Respondent's application for voluntary departure was granted until
    _____ upon posting a bond in the amount of $ _____
    with an alternate order of removal to _____

[ ] Respondent's application for asylum was ( ) granted ( ) denied
    ( ) withdrawn.

[ ] Respondent's application for withholding of removal was ( ) granted
    ( ) denied ( ) withdrawn.

[ ] Respondent's application for cancellation of removal under section
    240A(a) was ( ) granted ( ) denied ( ) withdrawn.

[ ] Respondent's application for cancellation of removal was ( ) granted
    under section 240A(b)(1)   ( ) granted under section 240A(b)(2)
    ( ) denied ( ) withdrawn. If granted, it was ordered that the
    respondent be issued all appropriate documents necessary to give
    effect to this order.

[ ] Respondent's application for a waiver under section _____ of the INA was
    ( ) granted ( ) denied ( ) withdrawn or ( ) other.

[ ] Respondent's application for adjustment of status under section _____
    of the INA was ( ) granted ( ) denied ( ) withdrawn. If granted, it
    was ordered that respondent be issued all appropriate documents necessary
    to give effect to this order.

[ ] Respondent's status was rescinded under section 246.

[ ] Respondent is admitted to the United States as a _____ until _____.

[ ] As a condition of admission, respondent is to post a $ _____ bond.

[ ] Respondent knowingly filed a frivolous asylum application after proper
    notice.

[ ] Respondent was advised of the limitation on discretionary relief for
    failure to appear as ordered in the Immigration Judge's oral decision.

[X] Proceedings were terminated.

[ ] Other: _____

Date   Oct 2, 1998
Appeal: ~~WAIVED~~   Appeal Due By: Nov 2, 1998
Reserved By INS

                                                  DAVID AYALA
                                                  Immigration Judge

CIP

**EXHIBIT B**

STATE OF TEXAS
COUNTY OF CAMERON

### AFFIDAVIT OF FACT

I, **Elizabeth Hernandez de Anguiano**, am a legal permanent resident with an immigration case styled *In the Matter of Elizabeth Hernandez de Anguiano*, A42 913 514. I have personal knowledge of the matters stated herein and they are true and correct.

1) I am thirty-three (33) years old. I have been a lawful permanent resident since 1991 when I was twenty-one (21) years old but I came here originally to live when I was fifteen(15) with my husband.

2) On February 4, 1998, I plead guilty to a charge of possession of marijuana in the 105th Judicial District Court of Kleberg County, Texas. I understand that the judge sentenced me to deferred adjudication community supervision.

3) At the time I plead guilty I understood that my immigration status would not be affected. I thought I would remain in the United States; I just understood that if I was a U.S. citizen I would get a shorter time in jail. Instead, immigration proceedings began to deport me. I have no prior criminal record and no deportation or voluntary departure. I believe that I would be eligible for Federal First Offender Act treatment if I were in the federal criminal system. I have complied with all of the terms of the community supervision. This supervision is set to end in 2005.

4) I have now lived in the United States for eighteen (18) years, marrying, divorcing, remarrying and raising my six (6) U.S. citizen children here. During those years, I returned to Mexico many times until my arrest in 1997, but those visits were for short periods only. I have no work experience in Mexico and have not lived there as an adult.

5) I have six (6) children born in the U. S.. They are: Carla, age 16, 11th grade, Lamar High School, Houston, Texas; Carlos Jr., age 12,


EXHIBIT C

7th grade, living with his father in Brownsville, Texas; Iris, age 11, 6th grade, Sugar Grove Elementary School, Houston, Texas; Elizabeth, age 10, 3rd grade, Sugar Grove Elementary School, Houston, Texas; Alicia, age 4, and youngest, Edgar, age 3. The last two are children of my second relationship, one with Edgar Benitez, a legal permanent resident.

6) I am attending Houston Training School to study cosmetology. I have been studying for eight (8) months, and think that I will complete the course in about five (5) months. I tambien am also studying English.

7) Besides being eligible for Federal First Offender treatment, I also think that I am eligible for Cancellation of Removal for Legal Permanent Residents, and definitely would have been eligible for that at the time of the immigration proceedings in Harlingen, Texas.

This affidavit has been translated into Spanish for me. I understand what it says and what is stated is true.

Further, Affiant sayeth not.

*Elizabeth Hdez Anguiano*
**Elizabeth Hernandez de Anguiano**

**Sworn to and subscribed** before me by **Elizabeth Hernandez de Anguiano** on this the 16th day of June, 2003.

*Margarita Moreno*

[Notary seal: MARGARITA MORENO, Notary Public, STATE OF TEXAS]